UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD D. DITTMAR,<br><br>                Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>                Defendant. | CASE NO. 13-cv-05196 BHS<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: April 11, 2014 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 20, 21, 22).

After considering and reviewing the record, the Court finds that the Administrative Law Judge erred in his evaluation of examining doctor Michael Corpolongo, Ph.D. This

1  error was harmful, and therefore the Commissioner's decision should be reversed and
2  remanded for further proceedings.

## BACKGROUND

Plaintiff, RICHARD D. DITTMAR, was born in 1984 and was 25 years old on the alleged date of disability onset of March 15, 2009 (*see* Tr. 160, 163). Plaintiff graduated from high school and completed 1 year of college (Tr. 37). At the time of the hearing, plaintiff was again taking college classes (*id.*). Plaintiff has worked for a party store, a coffee shop, a retail store, and grocery store (Tr. 44-46).

Plaintiff has at least the severe impairments of "bipolar disorder and obesity (20 CFR 404.1520(c) and 416.920(c))" (Tr. 17).

At the time of the hearing, plaintiff was living with his mother (*see* Tr. 202).

## PROCEDURAL HISTORY

On December 21, 2010, plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act (*see* Tr. 160-162, 163-169). The applications were denied initially and following reconsideration (Tr. 63-76, 77-92). Plaintiff's requested hearing was held before Administrative Law Judge Timothy Mangrum ("the ALJ") on February 14, 2012 (*see* Tr. 31-62). On February 29, 2012, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.12-30).

On February 1, 2013, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6).  *See* 20 C.F.R. § 404.981.  Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in March, 2013 (*see* ECF No. 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on June 3, 2013 (*see* ECF Nos. 10, 11).  In plaintiff's Opening Brief, he contends the ALJ erroneously evaluated the opinions of Dr. Michael Corpolongo, Ph.D., and Dr. Dana Harmon, M.D., as well as the Global Assessment of Functioning ("GAF") scores in the record (*see* ECF No. 20, pp. 6-7, 10-14, 17-18).  He also contends the ALJ erroneously assessed his credibility and failed to consider properly the episodic nature of his bipolar disorder (*see id.*, pp. 7-17).  Plaintiff asks the Court to remand for an award of benefits (*see id.*, pp. 2).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and

cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of

administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009).

## DISCUSSION

**1. Whether or not the ALJ properly evaluated the medical evidence.**

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews, supra*, 53 F.3d at 1043); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical

evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes, supra*, 881 F.2d at 751).

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey, supra*, 849 F.2d at 421-22). But, the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

**a. Dr. Michael Corpolongo, Ph.D.**

Dr. Corpolongo examined plaintiff in October 2009, October 2010, and September 2011 (Tr. 273-90, 292-305, 306-14). Dr. Corpolongo opined that plaintiff had marked limitations in his ability to exercise judgment and make decisions; either marked or moderate limitations in his ability to maintain appropriate behavior in a work setting; moderate limitations in his ability to perform routine tasks, respond appropriately to and tolerate the pressures and expectations of a normal work setting, care for self, and be aware of normal hazards and take appropriate precautions; and either mild or moderate limitations in his ability to relate appropriately to co-workers, supervisors, and the public (Tr. 279, 298, 310). The ALJ gave Dr. Corpolongo's opinions "some weight inasmuch as I find the claimant should be limited to unskilled work and occasional interaction with the public and coworkers" (Tr. 23).

As plaintiff argues, the ALJ erred by failing to provide any specific and legitimate reason to reject the opinions of Dr. Corpolongo that the ALJ did not incorporate into the RFC. *See Lester, supra*, 81 F.3d at 830-31. In fact, the ALJ provided no reason whatsoever. According to Social Security Ruling ("SSR") 96-8p, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20. Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir.1988)) (internal citation and footnote omitted). As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984); *Paxton, supra*, 865 F.2d at 1356).

The Commissioner nevertheless argues that the ALJ properly considered Dr. Corpolongo's opinions by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes, supra*, 881 F.2d at 751. In particular, the Commissioner points out that the ALJ summarized the medical evidence, including the conflicting opinions of Dr. Corpolongo and Dr. Michael Boltwood, Ph.D., and gave "some weight" to Dr. Corpolongo's opinions and "significant weight" to Dr. Boltwood's opinion that plaintiff did not "have any problems that could be considered disabling" (Tr. 23, 267). The Court

is not persuaded. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctor's, are correct." *Reddick, supra*, 157 F.3d at 725 (*citing Embrey, supra*, 849 F.2d at 421-22). Here, the ALJ did not explain why his RFC assessment, which conflicted with Dr. Corpolongo's opinions, was correct, rather than the doctor's. The ALJ also failed to explain why Dr. Corpolongo's opinions were not adopted, as required by SSR 96-8p.

The ALJ's error was harmful because Dr. Corpolongo's opinions regarding plaintiff's functional limitations are relevant directly to the determination of plaintiff's RFC. The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina, supra*, 674 F.3d at 1115 (*citing Stout v. Comm'r*, *Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Court noted multiple instances of the application of these principles. *Id*. (collecting cases). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting*

*Shinsheki, supra*, 556 U.S. at 407 (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

As explained below, the ALJ's errors with respect to Dr. Corpolongo's opinions require remand for further proceedings, rather than for an award of benefits. On remand, the ALJ should reconsider Dr. Corpolongo's opinions and, as necessary, revise plaintiff's RFC and proceed with steps four and five.

**b. Dr. Dana Harmon, M.D.**

In November 2009, Dr. Harmon provided a "Certification for Medicaid: GAX Decision,"[1] finding that plaintiff "appears to meet the SSA criteria for 12.04, Affective Disorders, based on the impacts of his bipolar disorder" (Tr. 291). The ALJ gave this opinion "little weight" for two reasons. First, the ALJ found it to be "inconsistent with the medical evidence as treatment providers and examining doctors found the claimant cooperative, had a full affect, normal speech, and had unremarkable behavior" (Tr. 23). Second, the ALJ determined that the opinion was "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion" (Tr. 23).

Because Dr. Harmon was a reviewing, non-examining doctor, the ALJ was permitted to reject her opinion "by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (*citing Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)); *Andrews, supra*, 53 F.3d at 1041). However, all of the determinative findings by the ALJ must be supported by substantial evidence. *See*

---

[1] "GAX" stands for "general assistance expedited Medicaid."

*Bayliss, supra*, 427 F.3d at 1214 n.1 (*citing Tidwell, supra*, 161 F.3d at 601); *see also Magallanes, supra*, 881 F.2d at 750 ("Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (*quoting Davis, supra*, 868 F.2d at 325-26).

Plaintiff contends that the ALJ erred in rejecting Dr. Harmon's opinion as unsupported by the record because the fact that medical providers found plaintiff was "cooperative, had a full affect, normal speech, and had unremarkable behavior" (Tr. 23) does not contradict the opinion evidence establishing that plaintiff would have limitations in his ability to tolerate the pressures and expectations of a full-time competitive work setting. This argument is unavailing. Even if the ALJ erred as plaintiff claims, that error would be harmless because the ALJ properly rejected Dr. Harmon's opinion as conclusory and inadequately supported by clinical evidence (Tr. 23). *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Carmickle, supra*, 533 F.3d at 1162 (including an erroneous reason, among other reasons, is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall determination).

Plaintiff also argues that the ALJ should have given at least as much weight to the GAX decision as is required of VA disability decisions. Again, plaintiff's argument fails to establish error. In cases where the VA has made a disability determination, the Ninth Circuit has instructed that "because social security disability and VA disability programs

serve the same governmental purpose-providing benefits to those unable to work because of a serious disability, the ALJ must give great weight to a VA determination of disability." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010) (*citing McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)).  The ALJ may give less weight to a VA disability rating if he or she "gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.*  Plaintiff fails to cite, however, any authority requiring the Court to treat state agency disability determinations the same as VA disability determinations.  On the other hand, 20 C.F.R. § 416.904 states that disability determinations made by other governmental agencies are "not binding" on the ALJ.  20 C.F.R. § 416.904 ("A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.").  Moreover, 20 C.F.R. §§ 404.1527(d) and 416.927(d) provide that certain issues, such as whether an impairment meets or equals the requirements of a listed impairment, are not medical opinions, but, rather, administrative case-dispositive findings reserved to the Commissioner, and the source of the opinion is entitled to no special significance.  20 C.F.R. §§ 404.1527(d), 416.927(d).  In sum, the ALJ did not err in his consideration of Dr. Harmon's opinion.

### c. GAF scores

The record contains GAF scores ranging from 55 to 61 (Tr. 240, 266, 278, 297, 309). A GAF score of 61-70 indicates "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders*, 34 (4th ed. Text Revision 2000). A GAF score of 51-60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." *Id.*

Plaintiff contends the ALJ erred by giving "a blanket rejection to all GAF scores" (ECF No. 20, pp. 17-18). Plaintiff's contention is not borne out by the ALJ's decision. The ALJ provided the following analysis of the GAF scores in the record:

> While I have thoroughly reviewed the clinical findings and functional assessments provided by the clinicians who provided these scores, I give the scores themselves very little weight because I find they lack probative value in my analysis. The regulations direct the administrative law judge to perform a function-by-function assessment of the claimant's maximum residual functional capacity (*See* SSR 96-9p). However, as shown in the explanations accompanying the scores on the GAF scale, the scores are an attempt to rate symptoms or functioning (*See Diagnostic and Statistical Manual of Mental Disorders* at 32 (4th ed. 1994)). In this case, it is not evident from a review of the scores in the record which of these the respective clinicians were rating. This is particularly relevant to my analysis of the claimant's ability to perform basic work activities, as symptoms are an individual's "own description" of his or her impairments (*See* SSR 96-7p). I also find that the claimant's statement's about his functioning are less than fully credible, [thus] a score based on such statements is of little value in my analysis. Furthermore, as made clear in the August 2000 comments in the Federal Register about regulations that address the mental disorder evaluation under the Social Security Act, the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings" (65 Fed. Reg. 50, 746 at 50, 764-50, 765 (August 21, 2000) (discussing comments to 20 C.F.R. pt. 404, subpt. P,

> app. 1, Listing 12.00D)).  For these reasons, I find the GAF scores in this
> case do not convey information that furthers the functional analysis and
> therefore give the scores very little weight in my analysis.

(Tr. 24.)  As this discussion establishes, the ALJ's consideration of the GAF scores does not amount to a blanket rejection of GAF scores in every disability analysis.  Rather, the ALJ specifically considered the GAF scores in this case and provided specific and legitimate reasons to give them very little weight.  The Court thus finds no error in relation to the ALJ's consideration of the GAF scores in the record.

**2.  Whether or not the ALJ properly evaluated plaintiff's testimony.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration.  In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence.  *See* 20 C.F.R. § 404.1529(c).  Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

**3.  Whether or not the ALJ properly evaluated plaintiff's bipolar disorder.**

Plaintiff contends the ALJ failed to consider that his bipolar disorder is "episodic in nature" and erred by rejecting various sources because plaintiff had brief, episodic improvements (ECF No. 20, pp. 7-8).  In particular, plaintiff argues it was error for the ALJ to reject the statement of plaintiff's mother, Jeanette Dittmar, on the grounds that medical sources found that plaintiff was "cooperative, had a full affect, normal speech,

and had unremarkable behavior" (*id.*, p. 7 (quoting Tr. 22-24)).[2]  Plaintiff maintains that "[t]he totality of the record shows an inability to tolerate the stress of normal work throughout the relevant period" (*id.*, p. 8).

Plaintiff's first argument regarding the episodic nature of bipolar disorder fails because, as the Commissioner points out, the ALJ specifically considered plaintiff's mood swings throughout the decision.  At step three, the ALJ found moderate difficulties in social functioning based in part on the fact that "[a]t times, treatment providers and examining doctors found the claimant had mood swings, depressed mood and feelings of hopelessness" (Tr. 18).  In assessing plaintiff's RFC, the ALJ considered plaintiff's allegations that "his mood swings affect his ability to have consistent friendships" and his testimony that "he has a temper and has trouble interacting with coworkers when he has mood swings" (Tr. 20).  The ALJ noted that in July and August 2010, plaintiff "reported that he did not feel depressed or manic, but felt unmotivated" (Tr. 21; *see also* Tr. 325).  The ALJ further noted various instances when plaintiff reported having mood swings, as well as instances when he reported not having many mood swings (Tr. 21).  The ALJ also discussed Dr. Corpolongo's finding that mood swings affect plaintiff's ability to interact with others, and thus the ALJ limited plaintiff to only occasional interaction with the public and coworkers in the RFC (Tr. 23).  Based on this record, the Court cannot say that the ALJ failed to consider the episodic nature of plaintiff's bipolar disorder.

---

[2] Plaintiff also argues the ALJ erroneously rejected Dr. Harmon's opinion for these same reasons.  As discussed above, however, the ALJ properly discounted Dr. Harmon's opinion.

The Court turns now to plaintiff's argument that the ALJ erroneously discounted Ms. Dittmar's statements. Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources" and "other sources" such as nurse practitioners, therapists and chiropractors, who are considered other medical sources, *see* 20 C.F.R. § 404.1513 (d). *See also Turner, supra*, 613 F.3d at 1223-24 (*citing* 20 C.F.R. § 404.1513(a), (d)); SSR 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout, supra*, 454 F.3d at 1053 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) and (e), 416.913(d)(4) and (e)).

The Ninth Circuit has characterized lay witness testimony as "competent evidence," noting that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." *Bruce, supra*, 557 F.3d at 1116 (*citing Smolen, supra*, 80 F.3d at 1289). Similar to the rationale that an ALJ may not discredit a plaintiff's testimony as not supported by objective medical evidence once evidence demonstrating an impairment has been provided, *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th

Cir. 1991) (*en banc*) (*citing Cotton, supra*, 799 F.2d at 1407), but may discredit a plaintiff's testimony when it contradicts evidence in the medical record, *see Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995); *see also Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001); *Smolen*, *supra,* 80 F.3d at 1284, an ALJ may discredit lay testimony if it conflicts with medical evidence, even though it cannot be rejected as unsupported by the medical evidence.  *See Lewis, supra*, 236 F.3d at 511 (An ALJ may discount lay testimony that "conflicts with medical evidence") (*citing Vincent, supra*, 739 F.2d at 1395; *Baylis, supra*, 427 F.3d at 1218 ("Inconsistency with medical evidence" is a germane reason for discrediting lay testimony) (*citing Lewis, supra*, 236 F.3d at 511); *see also Wobbe v. Colvin*, 2013 U.S. Dist. LEXIS 111325 at *21 n.4 (D. Or. 2013) (unpublished opinion) ("*Bruce* stands for the proposition that an ALJ cannot discount lay testimony regarding a claimant's symptoms solely because it is *unsupported* by the medical evidence in the record; it does *not* hold *inconsistency* with the medical evidence is not a germane reason to reject lay testimony") (*citing Bruce, supra*, 557 F.3d at 1116), *adopted by Wobbe v. Colvin*, 2013 U.S. Dist. LEXIS 110195 at *2 (D. Or. 2013) (unpublished opinion).

      As summarized by the ALJ, "Ms. Dittmar stated the claimant sometimes cannot be around people, has mood swings, days of depression, is not mentally able to leave the house some days, and is hard to communicate with" (Tr. 24; *see also* Tr. 202-09).  The ALJ gave her statement "some weight" because the medical evidence showed that plaintiff's "mood swings affect his ability to interact with others" (Tr. 24).  The ALJ, however, gave "little weight" to Ms. Dittmar's statements regarding the severity of

plaintiff's bipolar disorder because "the medical evidence shows treatment providers and examining doctors generally found the claimant cooperative, had a full affect, normal speech, and had unremarkable behavior, and his medication controlled his symptoms" (*id.*).

Plaintiff challenges only the ALJ's first reason for discounting Ms. Dittmar's statements—that his medical providers generally found him cooperative, with a full affect, normal speech, and unremarkable behavior. Plaintiff does not address the ALJ's finding that medication controlled plaintiff's symptoms. Indeed, this unchallenged finding is supported by substantial evidence in the record, including consistent reports to his treating providers that he had fewer and less intense mood swings when taking medication (*see, e.g.*, Tr. 239-40, 244-45, 249-50, 254-55, 256, 329-31, 335-56). Therefore, even if the ALJ erred as plaintiff claims, plaintiff has failed to establish that the error would be harmful. *See Carmickle, supra*, 533 F.3d at 1162 (including an erroneous reason, among other reasons, is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall determination).

**4. Whether this matter should be remanded for further administrative proceedings or with a direction to award benefits.**

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put

forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen, supra*, 80 F.3d at 1292). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Plaintiff argues that the Court should credit as true Dr. Corpolongo's opinions and remand for an award of benefits. The Court disagrees. Applying the "credit-as-true" rule "is not mandatory when, even if the evidence at issue is credited, there are 'outstanding issues that must be resolved before a proper disability determination can be made.'" *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010) (*quoting Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009)). Here, outstanding issues must be resolved, specifically the conflicting opinions of Dr. Corpolongo and Dr. Boltwood (*compare* Tr. 273-290, 292-305, 306-314, *with* Tr. 263-67). *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick, supra*, 157 F.3d at 722 (*citing Andrews, supra*, 53 F.3d at 1043). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the

1  ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v.*
2  *Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145,
3  150 (9th Cir. 1980))).

## CONCLUSION

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.  **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on April 11**,** 2014, as noted in the caption.

Dated this 19th day of March, 2014.

J. Richard Creatura
United States Magistrate Judge